FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA
2021 JUL 12 AM 11:41
OFFICE OF THE CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:18CR216 |
| vs. | PLEA AGREEMENT |
| NEBRASKA RAILCAR CLEANING SERVICES LLC, | |
| Defendant. | |

IT IS HEREBY AGREED between the plaintiff, United States of America, through its counsel, Jan W. Sharp, Acting United States Attorney, and Jean E. Williams, Acting Assistant Attorney General, Environment and Natural Resources Division, United States Department of Justice, and the defendant, Nebraska Railcar Cleaning Services LLC (NRCS), through its owners, as follows:

## I
## THE PLEA

Defendant NRCS agrees to plead guilty to Counts 1 - 21 of the Indictment. Count 1 charges a violation of Title 18, United States Code, Section 371; Counts 2 - 3 each charge a violation of Title 29, United States Code, Section 666(e). Counts 4 -7 charge violations of Title 42, United States Code, Section 6928; and Counts 8 – 21 charge violations of Title 18, United States Code, Section 1519.

This plea agreement is part of a "package" disposition. In order for defendant to receive the benefit of this agreement, co-defendants Steven Michael Braithwaite and Adam Thomas Braithwaite, also must plead guilty at the same time. Further, defendant

1

expressly acknowledges its understanding that the disposition contemplated by this agreement is part of a "package" disposition with its co-defendants, Steven Michael Braithwaite and Adam Thomas Braithwaite, wherein the obligations of the United States under the agreement are conditioned on the performance by defendant and its co-defendant(s) of their obligations under their respective agreements.

In exchange for the defendant's plea of guilty as indicated above, the United States agrees that it will not require NRCS to pay any particular fine, but will leave the amount of any fine to the Court's discretion, with input from the Parties. The United States also will not seek dissolution of the defendant.

## II
## NATURE OF THE OFFENSES

A. ELEMENTS EXPLAINED.

Defendant understands that the offenses to which defendant is pleading guilty has the following elements. First, the elements of a violation of Title 18, United States Code, Section 371 (Count 1) are:

1. Two or more people reached an agreement to defraud the Occupational Safety and Health Administration (OSHA), an agency of the United States, to wit, to hamper, hinder, impair, impede, and obstruct, by trickery, deceit, and dishonest means, the lawful and legitimate functions of OSHA;
2. The defendant voluntarily and intentionally joined in the agreement, either at the time it was first reached or at some later time while it was still in effect;
3. At the time the defendant joined in the agreement, the defendant knew the purpose of the agreement; and
4. While the agreement was in effect, a person or persons who had joined in the agreement knowingly did one or more acts for the purpose of carrying out or carrying forward the agreement.

2

Second, the elements of a violation of Title 29, United States Code, Section 666(e) (Counts 2 – 3) are:

1. The defendant was an employer engaged in a business affecting commerce;
2. The employer violated a standard, rule, or order promulgated pursuant to the Occupational Safety and Health Act (OSH Act), or any regulation prescribed under the Act;
3. The violation was willful; and
4. The violation caused the death of an employee.

Third, the elements of a violation of Title 42, United States Code, Section 6928(e) (Count 4) are:

1. The defendant knowingly treated, or caused others to treat, a waste;
2. The waste was listed or identified as a hazardous waste by the U.S. Environmental Protection Agency (EPA) pursuant to the Resource Conservation and Recovery Act (RCRA);
3. The defendant knew that the hazardous waste had a potential to be harmful to others or to the environment; in other words, it was not a harmless substance like uncontaminated water;
4. The defendant did not have a permit to treat the hazardous waste under RCRA;
5. At the time of the violation, the defendant placed another person in imminent danger of death or serious bodily injury; and
6. The defendant knew at the time of the violation that his acts placed another person in danger of death or serious bodily injury.

Fourth, the elements of a violation of Title 42, United States Code, Section 6928(d)(2)(A) (Count 5) are:

1. The defendant knowingly treated, or caused others to treat, a waste;
2. The waste was listed or identified as a hazardous waste by the EPA pursuant to RCRA;
3. The defendant knew that the hazardous waste had a potential to be harmful to others or to the environment; in other words, it was not a harmless substance like uncontaminated water; and
4. The defendant did not have a permit to treat the hazardous waste under RCRA.

3

Fifth, the elements of a violation of Title 42, United States Code, Section 6928(d)(1)

(Count 6) are:

1. The defendant knowingly transported or caused others to transport, a waste;
2. The waste was listed or identified as a hazardous waste by the EPA pursuant to RCRA;
3. The defendant knew that the hazardous waste had a potential to be harmful to others or to the environment; in other words, it was not a harmless substance like uncontaminated water; and
4. The defendant knew receiving facility did not have a permit to dispose of the hazardous waste under RCRA.

Sixth, the elements of a violation of Title 42, United States Code, Section 6928(d)(5)

(Count 7) are:

1. The defendant knowingly transported or caused others to transport, a waste;
2. The waste was listed or identified as a hazardous waste by the EPA pursuant to RCRA;
3. The defendant knew that the hazardous waste had a potential to be harmful to others or to the environment; in other words, it was not a harmless substance like uncontaminated water; and
4. The transportation was without a manifest as required under RCRA.

Seventh, the elements of a violation of Title 18, United States Code, Section 1519 are:

1. The defendant knowingly falsified a document;
2. With the intent to impede, obstruct, or influence the investigation and proper administration;
3. Of any matter within the jurisdiction of any department or agency of the United States, or in relation to or contemplation of any such matter or case.

B. ELEMENTS UNDERSTOOD AND ADMITTED - FACTUAL BASIS.

Defendant fully understands the facts of this case. Defendant has committed each of the elements of the crimes, and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed for all relevant times:

4

1. NRCS was incorporated under the laws of the State of Nebraska and did business in Omaha, Nebraska. NRCS was in the business of cleaning railcars, including rail tanker cars, for NRCS customers prior to repair and other work being performed on the railcars by other companies. Tanker car cleaning often involved NRCS sending workers inside the cars' tanks to scrape and remove various commodities, including gasoline, ethanol, petroleum by-products, pesticides, herbicides, and food grade products. For thicker materials, NRCS workers would scrape material from the floor of the tanker cars, place it in a bucket, and indicate to another worker that the bucket was ready to be removed by lifting through a "manway" at the top of the railcar. Once clear of the car, workers emptied the bucket into another container (generally, a fifty-gallon drum cut in half), and ultimately emptied the half-drum into a dumpster. The dumpster would be hauled by a trash hauling service to a municipal landfill.

2. Defendant Stephen Michael Braithwaite was the President and majority owner of NRCS and was responsible for all phases of the business, including both environmental and worker safety issues.

3. Defendant Adam Thomas Braithwaite was the Vice President and a minority owner of NRCS and handled both environmental and worker safety issues, among others.

4. Rail tanker cars are "confined spaces" under the OSH Act. 29 C.F.R. § 1910.46(b).

5. OSHA officials conducted regulatory inspections during which OSHA officials notified the principals of NRCS that NRCS was in violation of OSHA safety regulations concerning confined space entries.

6. NRCS was an "employer" under the OSH Act. 29 U.S.C. § 652(5).

7. In May 2014, NRCS amended its Health and Safety Program, which stated that employees were not permitted to be in a rail tanker car if the LEL (lower explosive (or flammable) limit) exceeded 10%. OSHA regulations forbid workers from entering confined spaces, such as rail tanker cars, if the LEL exceeds 10%.

8. The NRCS Health and Safety Program required benzene testing where benzene exposure could reasonably be expected, "[d]ue to the fact that BENZENE is toxic, colorless ... and is flammable ..." and required warning signs where benzene was present that stated:

<u>DANGER</u>
<u>BENZENE</u>
<u>CANCER HAZARD</u>
<u>FLAMMABLE – NO SMOKING</u>
<u>AUTHORIZED PERSONNEL ONLY</u>
<u>RESPIRATORS REQUIRED IN THIS AREA</u>

9. On or about July 31, 2013, OSHA inspected NRCS and issued a citation for violating the requirement that entrants into confined spaces such as tanker cars monitor atmospheric conditions at appropriate intervals during the entry.

10. On or about June 26, 2013, the Nebraska Department of Environmental Quality (NDEQ) conducted a hazardous waste inspection of NRCS. During

6

the inspection, NRCS claimed that it did not generate any hazardous waste, but produced no documentation of waste determinations when requested.

11. On or about August 2, 2013, the NDEQ sent an inspection report to NRCS, which explained that NRCS was required to conduct hazardous waste determinations, including for crude oil, contaminated material, and ethanol. The NDEQ report stated that crude oil may have characteristics that make it hazardous and should be tested for ignitability and toxicity. Included with the NDEQ report was an NDEQ informational guidance document—"Waste Determinations & Hazardous Waste Testing"—that explained the hazardous waste determination requirements for all waste generators.

12. On or about July 9-10, 2014, the U.S. EPA conducted a RCRA hazardous waste inspection of NRCS. NRCS claimed it was making hazardous waste determinations for NRCS based on "generator knowledge," but did not test its waste to determine if it was hazardous. The EPA inspector issued a notice of violation to NRCS for failure to make proper waste determinations. The inspector also provided NRCS the same informational guidance document NDEQ had - "Waste Determinations & Hazardous Waste Testing."

13. Based on its inspection, on October 29, 2014, the U.S. EPA issued a letter of warning to NRCS for failure to make proper hazardous waste determinations by testing its waste for hazardous qualities. The EPA also issued NRCS an information request for documentation of hazardous waste determinations.

NRCS failed to send the EPA any hazardous waste determinations before an explosion occurred on April 14, 2015.

14. On or about January 27, 2015, NRCS received an inquiry from one of its customers about receiving and cleaning rail tanker car NATX303912, which included a Safety Data Sheet (SDS) for the product in the railcar, describing it as "natural gasoline," also known as "petrol, casing head gasoline, C5's." The SDS also stated that the flammability rating was "severe" at class "4" (the highest rating), that the natural gasoline would ignite at 0 degrees Fahrenheit, and that it contained benzene, a "cancer hazard." NRCS responded that it could handle the material in the railcar.

15. On or about February 5, 2015, NRCS entered into a Corrective Action Agreement with OSHA, where NRCS certified that it had taken the following corrective action on July 30, 2014:

> We are using Benzene as the limiting value. We are test (sic) the railcars prior to employee entrance for Benzene. We do not allow anyone in the tank until the reading is less than 5PPM which is 10 times the allowable TWA for Benzene and at the limit of our half-mask respirators. …
>
> The tank cars are monitored immediately prior to entrance by employees using a Multi-gas for 4 gasses (Oxygen, LEL, CO [Carbon Monoxide], and H2S [Hydrogen Sulfide]) and Draeger tubes for the presence of Benzene. Cars will have their atmospheres tested at low, medium, and high locations at least every hour while employees occupy the cars. If readings dictate the attendant will take readings on a more frequent basis.

16. On or about March 4, 2015, OSHA attempted to conduct a follow-up inspection of Defendant NRCS. OSHA was denied entry and told that NRCS

8

had a new policy to deny entry to OSHA and the EPA for inspections unless they had a warrant.

17. On or about March 4, 2015, Defendant NRCS placed its first order for purchase benzene tubes.

18. On or about March 25, 2015, OSHA obtained and served a warrant on Defendant NRCS, during which OSHA requested certain records, including respirator fit tests and employee medical evaluations. OSHA regulations require respirator fit tests and medical evaluations for all workers whose jobs require them to wear respirators. 29 C.F.R. § 1910.134.

19. On or about April 1, 2015, after not having received the requested records, OSHA sent Defendant NRCS an email again requesting the records and additionally requesting invoices for benzene tubes purchased by NRCS.

20. On or about April 6, 2015, Defendant NRCS emailed OSHA back, attaching records including benzene tube documents, respirator fit tests, and pulmonary function tests (a type of medical evaluation):

   a. Benzene tube document – namely a packing slip purporting to be from Company K and purporting to reflect an order for benzene tubes placed on June 17, 2014 (with a shipping date of June 16, 2014) – the document was false; Company K had not sold benzene tubes to NRCS before March 4, 2015, as Defendant Adam Thomas Braithwaite, acting on behalf of NRCS, knew.

9

    b.    Respirator fit tests - dated July 11, 2014, November 28, 2014, December 19, 2014, and February 3, 2015 – These were false documents—they bore the signature of an NRCS employee who had not performed the respirator fit tests, which were not done on those dates. The employee had not signed the fit test documents, as Defendant Adam Thomas Braithwaite knew.

    c.    Pulmonary function tests - dated July 10, 2014, November 27, 2014, December 18, 2014, and February 2, 2015 – These were false documents, which purportedly reflected tests conducted on NRCS employees by a third party contractor, which in fact had not been conducted on those employees on those dates.

21. On or about April 14, 2015, NRCS prepared to clean the "natural gasoline" residue from tanker car NATX303912. During the morning, an employee of NRCS tested rail tanker car NATX303912 using a 4-gas meter, which showed that explosive gases greatly exceeded 10% of the LEL. Under NRCS policy and OSHA regulations, only if an LEL of less than 10% was reached could workers be sent into the rail tanker car, and if workers were sent in, continuous monitoring would be required to ensure the LEL did not reach 10%.

22. LEL levels for tanker car NATX303912 did not drop below 10% on April 14, 2015. The tanker car was not tested for benzene levels. Nonetheless, NRCS sent two of its employees into the tanker car. Continuous monitoring was not conducted.

10

23. The two employees sent into tanker car NATX303912 began removing the remaining contents, which were hazardous for toxicity (Benzene) and ignitability, using scrapers, shovels, and a bucket. Another NRCS employee lifted the bucket with the hazardous waste out of the tanker car and emptied it into a larger container, which was a plastic fifty-five gallon drum cut in half. The half-drum was then carted to a dumpster for nonhazardous waste, where it was emptied and the hazardous waste was mixed with sawdust to change is physical character and also allowed to evaporate, which constituted treatment of that hazardous waste.

24. On April 14, 2015, approximately one hour after the two employees were sent into tanker car NATX303912, its contents ignited and exploded, killing those two employees and injuring a third.

25. On or about April 16, 2015, Defendant NRCS collected samples from three rail other tanker cars to test whether waste from those railcars was hazardous. The SDS's for the contents of two of those railcars (ACFX94580 and DBUX303094) showed that the contents were ignitable; one of those two railcars also tested positive for benzene above the RCRA limit. Thus, those two railcars contained hazardous waste. After the contents of the two railcars containing hazardous waste were removed, they were put into a dumpster, and later transported without a hazardous waste manifest to a non-hazardous waste landfill, which did not have a RCRA permit to treat or dispose of hazardous waste.

11

## III
## PENALTIES

A. COUNTS 1, 4 - 21. Defendant understands that the crimes to which defendant is pleading guilty carries the following penalties per count:

   1. A minimum 1 year and a maximum 5 years' probation;

   2. A maximum fine of the higher of $500,000 or twice the gross gain or loss, 18 U.S.C. § 3571(c)(3); and

   3. A mandatory special assessment of $400 per count.

B. COUNTS 2 - 3. Defendant understands that the crimes to which defendant is pleading guilty carries the following penalties per count:

   1. A maximum 5 years' probation;

   2. A maximum fine of the higher of $500,000 or twice the gross gain or loss, 18 U.S.C. § 3571(c)(4); and

   3. A mandatory special assessment of $50 per count.

## IV
## AGREEMENT LIMITED TO THE U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF NEBRASKA AND THE ENVIRONMENTAL CRIMES SECTION

This plea agreement is limited to the United States Attorney's Office for the District of Nebraska and the Environmental Crimes Section, Environment and Natural Resources Division, United States Department of Justice, and cannot bind any other federal, state or local prosecuting, administrative, or regulatory authorities.

# V
# SENTENCING ISSUES

A. **SENTENCING AGREEMENTS.** U.S. Sentencing Guidelines Calculations: There are no sentencing guidelines for calculating the fine for an organization convicted of an environmental crime to which Chapter Two, Part Q would apply if the Defendant were an individual. U.S.S.G. §8C2.1 (Background).

1. The Court will impose a sentence pursuant to 18 U.S.C. § 3553.

2. Probation. Because this plea involves felony violations, a term of probation from one to five years is authorized. 18 U.S.C. § 3561(c)(1); U.S.S.G. § 8D1.2(a)(1).

3. Fine. There is no agreement on the fine. The Court may impose a fine in any amount up to $500,000 or twice the gross gain or loss per count. 18 U.S.C. § 3571(c).

B. **CRIMINAL HISTORY.** Criminal History is calculated by Probation.

C. **"FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION.** The parties agree that the facts in the "factual basis" paragraph of this agreement are true and may be considered as "relevant conduct" under U.S.S.G. § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

13

The parties agree that all information known by the office of United States Pretrial Services may be used by the Probation Office in submitting its presentence report, and may be disclosed to the court for purposes of sentencing.

## VI
## WAIVER OF REPRESENTATION OF NRCS

A. The following individuals are the sole owners and officers of NRCS:

   a. Steven Michael Braithwaite, President: 60% owner;

   b. Adam Thomas Braithwaite, Vice President: 20% owner; and

   c. Steven Michael Braithwaite, II: 20% owner.

   (collectively, "the NRCS Owners"). NRCS does not have a Board of Directors.

B. Defendant NRCS was but no longer is represented by counsel in this case. NRCS had been represented by counsel, who was permitted to withdraw from representing NRCS in this case after a hearing on his motion to withdraw on September 15, 2020. (DE-67).

C. NRCS has a right to retain counsel, but the NRCS Owners represent to the Court that NRCS has no assets (financial, physical, or otherwise) to pay for counsel and has ceased business operations.

D. NRCS is not entitled to appointed counsel paid by Criminal Justice Act funds.

E. NRCS, by the NRCS Owners, understands that it is pleading guilty and hereby agrees to the following:

14

   a. It will not appeal its conviction with regard to proceeding without counsel;

   b. It will not collaterally attack its conviction with regard to proceeding without counsel if convicted;

   c. It agrees to enter a plea of guilty to the charges identified above, Counts 1-21 of the Indictment; and

   d. It agrees to the above statement of facts.

F. Counsel for Defendants Stephen Michael Braithwaite and Adam Thomas Braithwaite have advised the NRCS Owners regarding NRCS's rights, which they choose to waive on behalf of the company.

## VII
## DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

The defendant hereby knowingly and expressly waives any and all rights to appeal the defendant's conviction and sentence, including any restitution order in this case, and including a waiver of all motions, defenses, and objections which the defendant could assert to the charges or to the Court's entry of Judgment against the defendant, and including review pursuant to 18 U.S.C. § 3742 of any sentence imposed, except as provided in Section I above, (if this is a conditional guilty plea).

The defendant further knowingly and expressly waives any and all rights to contest the defendant's conviction and sentence in any post-conviction proceedings, including any proceedings under 28 U.S.C. § 2255, except:

15.

(a) The right to timely challenge the defendant's conviction and the sentence of the Court should the Eighth Circuit Court of Appeals or the United States Supreme Court later find that the charge to which the defendant is agreeing to plead guilty fails to state a crime.

(b) The right to seek post-conviction relief based on ineffective assistance of counsel.

If defendant breaches this plea agreement, at any time, in any way, including, but not limited to, appealing or collaterally attacking the conviction or sentence, the United States may prosecute defendant for any counts, including those with mandatory minimum sentences, dismissed or not charged pursuant to this plea agreement. Additionally, the United States may use any factual admissions made by defendant pursuant to this plea agreement in any such prosecution.

## VIII
## BREACH OF AGREEMENT

Should it be concluded by the United States that the defendant has committed a crime subsequent to signing the plea agreement, or otherwise violated this plea agreement, the defendant shall then be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted. Any such prosecution(s) may be premised upon any information, statement, or testimony provided by the defendant.

In the event the defendant commits a crime or otherwise violates any term or condition of this plea agreement, the defendant shall not, because of such violation of this agreement, be allowed to withdraw the defendant's plea of guilty, and the United States will be relieved of any obligation it otherwise has under this agreement, and may withdraw any motions for dismissal of charges or for sentence relief it had already filed.

## IX
## SCOPE OF AGREEMENT

This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral.

By signing this agreement, the defendant agrees that the time between the date the defendant signs this agreement and the date of the guilty plea will be excluded under the Speedy Trial Act. The defendant stipulates that such period of delay is necessary in order for the defendant to have opportunity to enter the anticipated plea of guilty, and that the ends of justice served by such period of delay outweigh the best interest of the defendant and the public in a speedy trial.

The United States may use against the defendant any disclosure(s) the defendant has made pursuant to this agreement in any civil proceeding. Nothing contained in this agreement shall in any manner limit the defendant's civil liability which may otherwise be found to exist, or in any manner limit or prevent the United States from pursuing any applicable civil remedy, including but not limited to remedies regarding asset forfeiture and/or taxation.

Pursuant to 18 U.S.C. § 3013, the defendant will pay to the Clerk of the District Court the mandatory special assessment of $100 for each felony count to which the defendant pleads guilty, and $10 for each misdemeanor count. The defendant will make this payment at or before the time of sentencing.

By signing this agreement, the defendant waives the right to withdraw the defendant's plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d). The defendant may only withdraw the guilty plea in the event the court rejects the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(5). Furthermore, defendant understands that if the court rejects the plea agreement, whether or not defendant withdraws the guilty plea, the United States is relieved of any obligation it had under the agreement and defendant shall be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted.

This agreement may be withdrawn by the United States at any time prior to its being signed by all parties.

## X
## MODIFICATION OF AGREEMENT MUST BE IN WRITING

No promises, agreements or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties.

## XI
## DEFENDANT'S OWNERS AND OFFICERS
## FULLY UNDERSTAND AGREEMENT

By signing this agreement, the NRCS owners certify that they have read it. The NRCS owners have had the opportunity to discuss the terms of this agreement with their counsel and fully understand its meaning and effect.

7/6/2021
Date

UNITED STATES OF AMERICA
JAN W. SHARP
Acting United States Attorney

DONALD KLEINE
ASSISTANT U.S. ATTORNEY

7/12/2021
Date

UNITED STATES OF AMERICA
JEAN E. WILLIAMS
Acting Assistant Attorney General
Environment and Natural Resources Division

KRISHNA S. DIGHE
SENIOR COUNSEL
ENVIRONMENTAL CRIMES SECTION

6/28/21
Date

STEVEN MICHAEL BRAITHWAITE
President of Defendant NRCS
60% Owner of NRCS
Registered Agent for NRCS

19

_6/23/21_
Date

ADAM THOMAS BRAITHWAITE
Vice President of Defendant NRCS
20% Owner of NRCS

_6-29-21_
Date

STEVEN MICHAEL BRAITHWAITE, II
20% Owner of NRCS

20